**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REGINALD M. POTTS, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CHIEF DANIEL MORECI, ASSISTANT EXECUTIVE DIRECTOR MICHAEL MILLER, SUPERINTENDENT VICTOR THOMAS, ADMINISTRATIVE COMMANDER FRANK ARCE, COMMANDER HUGH WALSH, COMMANDER SHEAHAN, CORRECTIONAL OFFICER THOMAS CINTRON, LIEUTENANT HAZEL DERDEN, CORRECTIONAL OFFICER DIMARCO, and SOCIAL WORKER ROBERT JEWELL, in their individual and official capacities, and THOMAS DART, in his official capacity as SHERIFF OF COOK COUNTY, ILLINOIS and in his individual capacity, and COUNTY OF COOK, <br><br> Defendants. | Case No. 12-cv-5310 <br><br> Honorable Judge John H. Lefkow <br><br> **Jury Trial Requested** |

**SECOND AMENDED COMPLAINT**

Plaintiff, Reginald M. Potts, Jr. complains of the violations of his constitutional rights by Defendants Daniel Moreci, Michael Miller, Hugh Walsh, Correctional Officer DiMarco, Victor Thomas, Hazel Derden, Frank Arce, Commander Sheahan, Robert Jewell, Thomas Cintron, and Sheriff Thomas Dart, in their individual and official capacities, and the County of Cook (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to vindicate the violations of his rights secured by the First, Fifth, and Fourteenth Amendments of the United States

Constitution that he has suffered during the five-plus years he has resided – and continues to reside – as a pre-trial detainee at Cook County Jail.

## JURISDICTION AND VENUE

2.    Plaintiff brings this matter pursuant to 42 U.S.C. § 1983.

3.    This Court has federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

4.    Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this district, and the events giving rise to the claims asserted herein occurred within this district.

## PARTIES

5.    Plaintiff, Reginald M. Potts, Jr., was at all relevant times a citizen of the United States and a pretrial detainee at Cook County Jail.

6.    Defendant Dart, in his official capacity as Cook County Sheriff, is the executive officer in charge of the Cook County Jail and the Cook County Department of Corrections. At all relevant times, Defendant Dart served in the elected position of Sheriff of Cook County, Illinois. The Cook County Sheriff is responsible for the acts of the other named Defendants while they are acting within the scope of their employment with the Cook County Sheriff's Office. Defendant Dart is also being sued in his individual capacity.

7.    Defendant Cook County is a county in the State of Illinois. Cook County administers itself through departments, one of which is the Cook County Sheriff's Office. Cook County, Illinois is liable for any judgments related to its agents and employees arising in the course of their employment.

8.    Defendants Moreci, Miller, Walsh, DiMarco, Thomas, Arce, Derden, Sheahan, Jewell, and Cintron were at all times relevant to this Complaint employed within the Cook County Sheriff's Office.

9.      At all times relevant to this Complaint, the Defendants acted under color of law and within the scope of their employment for the Cook County Sheriff's Office.  They are sued in their individual capacities.

## FACTUAL ALLEGATIONS

### *Plaintiff's Detention And Protected First Amendment Activities*

10.      On December 8, 2007, Plaintiff was admitted to the Cook County Jail for pretrial detention.  He has remained in pretrial detention since that time, and has spent the majority of those nearly six years as a detainee at Cook County Jail.

11.      The problems related to the living conditions at Cook County Jail are legion.  The Department of Justice conducted an investigation concerning these conditions, the results of which were memorialized in a report released in 2008.  Department of Justice, *Investigatory Findings re: Cook County Jail*, at pg. 3, July 11, 2008.  The investigation found that "inmates confined at [Cook County Jail] are not adequately protected from harm, including physical harm from excessive use of force by staff . . ."; moreover, "[Cook County Jail] is not adequately providing for the safety and well-being of the inmates."  *Id.*  Procedural and administrative deficiencies only compound the problem, as "[Cook County Jail] fails to elicit adequate information about use of force incidents, making management review ineffective."  *Id.* at 18.

12.      From the onset of his confinement, Plaintiff observed and experienced many of the same problems that the Department of Justice uncovered in its investigation.

13.      Starting in early 2008, Plaintiff complained about the conditions of his confinement, both informally to officers and through the formal grievance process as set forth in Cook County Jail procedure.  During his five-plus years in detainment, he has filed dozens of grievances cataloging the substandard living conditions in Cook County Jail and his mistreatment by its officers.

14.    In addition, Plaintiff has filed a number of civil lawsuits *pro se,* detailing the various issues associated with his living conditions, including a number of lawsuits naming or containing allegations related to treatment by the Defendants in this lawsuit.  Plaintiff has filed grievances and/or complained to supervisory employees at the Cook County Jail about each of the Defendants.

15.    Almost immediately after Plaintiff filed his first set of grievances, he experienced a swift and inequitable diminution in the quality of his living conditions.  These conditions worsened even further after he began filing *pro se* lawsuits against Defendants and other Cook County Jail employees.  Specifically, and as detailed more fully below, since he began filing grievances in 2008, Defendants have:  (1) subjected Plaintiff to extended periods of time in segregated housing; (2) denied him access to his counsel and the courts; and (3) subjected him to numerous threats and acts of violence; and (4) taken other unwarranted punitive actions, all in retaliation for Plaintiff having engaged in protected First Amendment activities.

16.    This treatment was inconsistent with the practices and administrative procedures applicable to other pretrial detainees at Cook County Jail.

*Plaintiff Was Placed In Segregation On Multiple Occasions*

17.    Since 2007, Plaintiff has been placed in the segregation unit at Cook County Jail on a number of occasions.

18.    Pursuant to Illinois Administrative Code § 701.160(e)(3), "[s]egregation shall not exceed 72 hours for minor rule violations."  Ill. Adm. Code § 701.160(e)(3).

19.    In each instance in which Plaintiff was placed in segregation, his detention period significantly exceeded 72 hours, and in most instances Plaintiff remained in segregation for many months at a time.  During his roughly five years at Cook County Jail, Plaintiff has been housed in various segregation units for more time than he has lived in the General Population

unit, which allows detainees increased freedom to move about and more social interaction with other inmates.

20.     Upon information and belief, Plaintiff was placed in the segregation unit allegedly for very minor rule violations or no rule violation whatsoever.  Defendants used the minor rule violations as a pretext for keeping Plaintiff in segregated housing for extended periods of time, and for periods of time far in excess of other similarly situated detainees.

21.     One example of such minor rule violation was an incident in which Plaintiff was found to be in possession of a television remote control from a day room that was adjacent to his cell.  Plaintiff was found with the remote control in his cell, and placed in the "Special Incarceration Unit" ("SI") – the most restrictive housing unit in Cook County Jail Division IX.  Defendants then kept Plaintiff in SI for the next nine months.  Plaintiff did not receive any hearing or meaningful opportunity to contest his segregation, nor was he given any justification for his continued segregation.

22.     While in the segregation unit, Plaintiff has been subjected to living conditions that are inconsistent even with those other detainees in the segregation units.

23.     For example, Illinois Administrative Code § 701.260(c) mandates that detainees be allowed in the exercise area, or "day room" area, for no less than one hour per day unless they are determined to be harmful or dangerous to others.  20 Ill. Admin. Code § 701.260(c).  This hour is the only period of time each day that detainees in some segregation units are allowed out of their cells to interact – albeit in a very restricted fashion where they are handcuffed, shackled, and fitted with a waist chain restraint – with other detainees.

24.     But, while Plaintiff was placed in the segregation unit, Cook County Sheriff's officers, including Defendants, on numerous occasions denied Plaintiff his rule-mandated hour

of recreation time per day, in some instances confining him to his cell for weeks at a time. At no

time during those extended periods of complete segregation did those officers tell Plaintiff that

they had determined he was harmful or dangerous to others, or give him an opportunity to protest

any such determination.

25.     Similarly, Defendants placed Plaintiff in a cell for a number of months that had

severe plumbing issues. Specifically, the cell had no cold water, very little warm water, and the

toilet in the cell leaked sewage onto the cell floor. Plaintiff complained about this issue almost

immediately, and again on multiple occasions, to various Cook County Jail employees, including

Defendant Moreci, and submitted grievances about the plumbing issues. But despite the fact that

Defendants had the authority to move Plaintiff to another cell or otherwise address the unsanitary

living conditions, Plaintiff was not moved to a different, fully functional cell for many months.

26.     And, on at least one occasion, Defendants kept the light on in Plaintiff's

segregation cell 24 hours per day for months at a time. Plaintiff filed numerous grievances

explaining that this perpetual illumination was disrupting his sleep, causing him headaches, and

triggering his seizures, but the practice did not stop until many months later.

27.     At all relevant times, Defendants maintained control over the conditions and

duration of Plaintiff's confinement in SI, which was discussed during periodic "level meetings."

Upon information and belief, Defendant Dart attended these meetings.

*Plaintiff Has Been Subjected To Threats, Acts Of Force, And Other Inequitable Treatment As A Pre-Trial Detainee*

28.     Defendants and other Cook County Jail employees under Defendants' control

have subjected Plaintiff to numerous threats of violence, acts of violence, and other inequitable

living conditions, purportedly in response to Plaintiff's verbal and/or non-violent interactions

with Defendants and other Cook County Jail employees.

29.     For example, Plaintiff has been threatened with physical violence or other punitive measures by various Cook County Sheriff's officers on a number of occasions.

30.     And, in many instances, Cook County Sheriff's officers have followed through with those threats.  On a number of occasions, Plaintiff has been pepper sprayed directly in his eyes, at point blank range, has had his fingers shut in his cell door, and has been punched, kicked, and pushed by multiple Cook County Sheriff's officers.

31.     On another occasion, Plaintiff was stripped naked and shackled to his bed, and left there for hours.  This is one in a litany of acts of aggression taken by Cook County Sheriff's officers against Plaintiff over the course of his detention.

32.     Plaintiff has also been threatened with – and received – various non-violent punishments from Defendants while a pretrial detainee in Cook County Jail.  For example, Defendant Moreci placed Plaintiff on a restrictive diet, consisting of only three portions of a meal replacement called "nutri-loaf" each day.  Plaintiff has been placed on this special diet for months at a time, and without any indication of why such a restriction had been put in place.  Other similarly situated detainees were not placed on any such restricted diet.

33.     On another occasion, Plaintiff was taken from his cell and held in the shower area while Cook County Sheriff's officers removed all of his possessions from his cell, including legal papers, research, and other legal documents.  He was then returned to his cell, which contained nothing more than a bare mattress, and left there for a period of 21 days.  During the 21 day period, Plaintiff had no hygiene items, no blankets, and was only allowed out of his cell one time per week to shower.

### *Defendants Denied Plaintiff Access To His Counsel And The Courts*

34.     Throughout Plaintiff's confinement at Cook County Jail, Cook County Sheriff's officers have disrupted his access to many – if not all – of the means necessary to allow him to

adequately pursue the various legal matters he is currently engaged in, including the instant litigation. Specifically, he has been repeatedly denied access to many means of communication, and has been given only restricted access to his counsel in comparison to similarly situated detainees.

35.     Plaintiff has been denied access to the telephone to contact his attorneys by Defendants, despite the fact that he has obtained a court order granting him one hour per week on a non-monitored telephone to speak with his counsel. Most detainees at Cook County Jail are allowed to place at least one telephone call each week pursuant to 20 Ill. Adm. Code § 701.190. In addition, that regulation provides that special arrangements may be made to allow inmates to make or receive confidential telephone calls to and from their attorneys. *Id.*

36.     But Plaintiff has been given very limited access to a telephone, and most of his telephonic access has been with a Cook County Jail employee present or on a telephone that is monitored and recorded by Cook County Jail personnel. As a result, he has not been able to communicate with his attorneys via telephone in any significant way.

37.     When Plaintiff complained to Defendant Moreci about his limited access to a telephone to speak with his attorney, and Defendants' continued refusal to adhere to the court order allowing him time to speak on a non-monitored phone with his counsel, Defendant Moreci replied, "The court orders you get from a Judge can't control how I run my jail, and I don't have to follow some liberal left wing Judge's court order."

38.     Similarly, Plaintiff has experienced a significant limitation on his access to – and privacy related to – his mail. On at least one occasion, Cook County Sheriff's Officers have searched for, confiscated, and read Plaintiff's privileged and confidential legal materials.

39.     Indeed, Plaintiff has consistently experienced problems sending and receiving mail after he began filing grievances against Defendants.  He has sent many letters that have never arrived at their intended destination, or have arrived weeks or even months after he sent them – including packages intended for his counsel.  In addition, Plaintiff has not received many pieces of mail that were sent to him.  This has significantly hampered his legal representation, as Plaintiff needs to correspond often with his attorneys in both his criminal and civil cases, and transmit materials to them that are critical to his defense.

40.     Plaintiff also appears *pro se* in a number of civil matters pending in front of multiple courts.  In at least one instance, Defendants' denial of Plaintiff's access to his mail has caused him to miss a critical deadline, where a court sent notice to Plaintiff by mail of a filing and his allotted time to respond, but that mailing arrived long after the filing deadline had passed. In that instance, the court nearly dismissed his case as a result of his failure to respond, yet he remained wholly unaware that he was required to submit any such response.  Later, the Jail confiscated all of his legal documents, which precluded Plaintiff from filing briefing related to a response to dismiss his *pro se* complaint.

41.     Plaintiff has also been videotaped en route to, and while waiting for his various court appearances to begin.  In particular, he has been videotaped by Cook County Sheriff's employees while in a holding cell waiting for his court appearances to begin.  This is the only time when Plaintiff has access to his counsel prior to these appearances, but as a result of the videotape, he cannot communicate with his counsel without fear of waiving his attorney-client privilege associated with those communications.

42.     These undue limitations restrict Plaintiff's access to necessary legal materials and counsel, and preclude him from pursuing numerous challenges concerning the conditions he is facing as a pretrial detainee at Cook County Jail.

43.     On March 22, 2008, Plaintiff filed his first grievance against the Cook County Jail and its employees.  Almost immediately thereafter, Plaintiff began to experience the numerous violations of his Constitutional rights detailed in the above Paragraphs.

44.     Defendants have engaged in the violations set out above, and have done so maliciously and with reckless indifference to Plaintiff's rights.  As Defendant Moreci stated in response to Plaintiff's complaint regarding his living conditions:

> My Sheriff will back me up: our lawyers say we can run our jail how we want, so file your lawsuits. You'll never get a dime out of my pocket, it's the County's money, not mine . . . Makes you think you shouldn't have messed with me or Manos with your grievances or lawsuits, doesn't it? You'll see my face and feel my hand as long as you're in this jail. You haven't seen nothing yet.

## CAUSES OF ACTION

45.     As described in Paragraphs 1 through 44 above, Defendants repeatedly violated Plaintiff's rights under the United States Constitution.  The Defendants' conduct, described herein, was objectively unreasonable and was undertaken intentionally with malice, animus, willfulness, wantonness, and reckless indifference to Plaintiff's rights.

## Count I: Retaliation

46.     Plaintiff incorporates Paragraphs 1 through 44 of this Complaint and restates them herein.

47.     The First Amendment to the United States Constitution guarantees Plaintiff's right to engage in protected speech without fear of unjust retaliation.

48.     Plaintiff engaged in lawful, Constitutionally protected speech in three distinct ways.  First, he complained verbally to various officers, including Defendants, regarding his living conditions while a pretrial detainee at Cook County Jail.  He again engaged in protected speech by filing grievances concerning his treatment by Defendants and his general living conditions at Cook County Jail, in accordance with Cook County jail procedure.  Finally, Defendant engaged in protected speech by filing multiple lawsuits against the Cook County Jail and its employees regarding the conditions of his confinement.

49.     In direct response to Plaintiff's exercise of protected speech, Defendants deprived Plaintiff of his rights in a manner likely to deter further protected speech in a number of ways.  These ways include, but are not limited to:  subjecting him to segregation for extended periods of time and under conditions unlike those most detainees face while in segregation; subjecting him to repeated threats, acts of violence, and other disciplinary actions; and restricting his access to counsel, as detailed in Paragraphs 1 through 44.

50.     Plaintiff's exercise of his right to protected speech was a motivating factor in Defendants' actions as detailed in Paragraphs 1 through 49, and those actions were taken in direct retaliation for Plaintiff's exercise of protected speech.

51.     The misconduct described in Count I was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

## Count II: Procedural Due Process

52.     Plaintiff incorporates Paragraphs 1 through 44 of this Complaint and restates them herein.

53.     The Fifth and Fourteenth Amendments to the United States Constitution guarantee that no person shall "be deprived of life, liberty or property without due process of law."

54.     As detailed in Paragraphs 1 through 44, Plaintiff, a pretrial detainee, has been assigned to the segregation unit at Cook County Jail on multiple occasions over the course of the last five years, for periods of time in excess of nine months.

55.     On many of the occasions when Plaintiff was placed into segregation, he was informed that a very minor violation of Cook County Jail rules was the reason behind his move into the segregation unit.

56.     On each of those occasions, the Cook County Jail employees expressed an intent to punish Plaintiff for his actions.

57.     On other occasions, Plaintiff was placed into the segregation unit without being informed of any punitive intent, and without any reasonable relationship to a legitimate, non-punitive administrative purpose.

58.     At no time was Plaintiff given a meaningful opportunity to contest the terms of his confinement, nor was he given an opportunity to minimize substantively unfair or mistaken deprivations of his liberty.

59.     Defendants' failure to provide Plaintiff such an opportunity is a violation of his due process rights under the Fifth and Fourteenth Amendments to the Constitution.

60.     The misconduct described Count II was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

61.     As a result of Defendants' actions, Plaintiff suffered mental anguish, humiliation, degradation, physical and emotion pain and suffering, and other consequential damages.

## Count III: Equal Protection

62.     Plaintiff incorporates Paragraphs 1 through 44 of this Complaint and restates them herein.

63.     Pursuant to the Fourteenth Amendment of the United States Constitution, no State may deny any person within its jurisdiction equal protection of its laws.

64.     As described in Paragraphs 1 through 44, Plaintiff has been unlawfully singled out for arbitrary and irrational treatment, and subjected to treatment different from other similarly situated detainees while a pre-trial detainee at Cook County Jail.

65.     This inequitable treatment resulted from intentional and/or purposeful discrimination against Plaintiff by Defendants, with no rational basis to justify that inequitable treatment.

66.     Such treatment is a violation of Plaintiff's Fourteenth Amendment right to equal protection.

67.     The misconduct described in Count III was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

68.     As a result of Defendants' treatment of Plaintiff, Plaintiff suffered mental anguish, humiliation, degradation, physical and emotion pain and suffering, and other consequential damages.

## Count IV: Denial of Access to the Court

69.     Plaintiff incorporates Paragraphs 1 through 44 of this Complaint and restates them herein.

70.     As described above in Paragraphs 1 through 44, Defendants have repeatedly denied Plaintiff access to the court by:  limiting his access to his counsel, limiting access to his mail, confiscating Plaintiff's legal materials without administrative justification, and monitoring Plaintiff's conversations with his attorneys.

71.     As a result of these denials of access, Plaintiff has been unable to meaningfully pursue a number of legal claims he has filed against the Cook County Jail, Defendants, and other

third parties, and has been hampered in his ability to defend himself in his upcoming criminal

trial.

72.     The reduction of Plaintiff's ability to prosecute his civil cases and defend himself

in his upcoming criminal trial is directly and causally linked to Defendants' denial of his access

to his counsel, the mail, and other legal materials.

73.     The misconduct described in this Count was undertaken with malice, willfulness,

and reckless indifference to Plaintiff's rights, and Plaintiff has suffered injury as a result.

## Count V: Monell Liability

74.     Plaintiff incorporates Paragraphs 1 through 44 of this Complaint and restates them

herein.

75.     The misconduct described in Paragraphs 1 through 44 was undertaken pursuant to

the policy and practice of the Sheriff of Cook County in that:

   a.     as a matter of widespread practice so prevalent as to comprise policy, the

Sheriff of Cook County encourages, and is thereby the moving force behind, the very

sorts of constitutional violations at issue here by failing to adequately supervise, control

and train its officers at Cook County Jail, and by failing to terminate or discipline officers

who fail to comport with constitutional standards;

   b.     the Sheriff of Cook County, who possesses final policy-making authority

over the Cook County Jail, explicitly approved of Plaintiff's unconstitutional treatment;

   c.     the Sheriff of Cook County delegated his final policy-making authority to

subordinates who perpetuated Plaintiff's unconstitutional treatment;

   d.     the Sheriff of Cook County, pursuant to his final policy-making authority,

ratified both his subordinates' unconstitutional treatment of Plaintiff and the

impermissible basis for the same.

- 14 -

## Count VI: Indemnification

76.     Plaintiff incorporates Paragraphs 1 through 75 of this Complaint and restates them herein.

77.     Defendant Cook County Sheriff, is responsible for paying any tort judgment for compensatory damages for which employees of the Sheriff's Department are liable within the scope of their employment.

78.     Defendant County of Cook is responsible for indemnifying the Cook County Sheriff for payment of any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Reginald M. Potts, Jr., respectfully requests that this Court:

(a) Enter judgment in Plaintiff's favor against Defendants for each and every claim set forth in this complaint, and award Plaintiff damages in an amount to be determined at trial;

(b) Award Plaintiff punitive damages from Defendants in their individual capacities;

(c) Enjoin Defendants from further infringing Plaintiff's Constitutional rights;

(d) Award Plaintiff reasonable costs and attorneys' fees; and

(e) Any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: August 6, 2013                    Respectfully submitted,


                                         /s/ Abby A. Wakefield
                                         James A. White, Bar No. 06190225
                                           jawhite@jonesday.com
                                         Abby Wakefield, Bar No. 6294019
                                           awakefield@jonesday.com
                                         Matthew C. Singer, Bar No. 6297632
                                           mcsinger@jonesday.com
                                         JONES DAY
                                         77 West Wacker Drive
                                         Chicago, Illinois 60601-1692
                                         (312) 782-3939

                                         ATTORNEYS FOR THE PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 6, 2013, I electronically filed the foregoing Second

Amended Complaint and Jury Demand with the Clerk of Court using the CM/ECF system,

which will send notification to all parties through counsel of record.


/s/ Abby A. Wakefield
Attorney for Plaintiff