**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | | |
|---|---|---|
| REGINALD M. POTTS, Jr., | ) | |
| | ) | |
| Plaintiff | ) | Case No: 12 C 5310 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| CHIEF DANIEL MORECI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Reginald M. Potts, Jr., has filed a second amended complaint against various

employees of Cook County Jail ("Cook County Jail" or the "Jail") in their individual capacities,

Cook County, and Cook County Sheriff Thomas Dart in both his individual and official

capacities.  (Dkt. 52.)  In his six-count complaint, Potts alleges (1) the defendants retaliated

against him in violation of his First Amendment rights; (2) they deprived him of his procedural

due process rights under the Fifth and Fourteenth Amendments by repeatedly placing him in a

segregation unit without giving him a meaningful opportunity to contest this confinement; (3)

they violated his equal protection rights pursuant to the Fourteenth Amendment by singling him

out for arbitrary and irrational treatment; (4) they denied his access to the courts by limiting his

access to counsel and monitoring his communications with attorneys; (5) claims for liability

under *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct.

2018, 56 L. Ed. 2d 611 (1978); and (6) claims for statutory indemnification.  (*Id.*)  The sole issue

before the court is whether Potts has alleged sufficient facts against Dart in his individual

capacity to survive Dart's motion to dismiss.  (Dkt. 70.)  For the following reasons, Dart's

motion is granted in part and denied in part.[1]

## BACKGROUND[2]

Potts is a pretrial detainee at Cook County Jail.  He alleges that Jail officials have

repeatedly subjected him to various violations of his constitutional rights.

In particular, Potts alleges that his First Amendment rights have been violated because

the defendants have engaged in retaliation against him.  He began complaining about the

conditions of his confinement "both informally to officers and through the formal grievance

process as set forth in Cook County Jail procedure" starting in early 2008, and has filed "dozens"

of grievances since then.  (Dkt. 52 ¶ 13.)  He has also filed a number of suits against Jail

officials, including suits against defendants named in this action.  (*Id.* ¶ 14.)  He alleges that

since he began filing these grievances, he has been (1) subjected to extended periods of time in

segregated housing; (2) denied access to counsel and the courts; (3) subjected to numerous

threats and acts of violence; and (4) subjected to other "unwarranted punitive actions" taken by

Jail personnel.  (*Id.* ¶ 15.)

Potts alleges that he has been placed in the segregation unit at Cook County Jail on

numerous occasions, and that in his first five years as a pretrial detainee he has spent more time

in segregation units than in the general population.  The reasons for his segregation have been

"very minor rule violations or no rule violation whatsoever," (*id.* ¶ 20), and defendants have used

---

[1]  The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because at least one defendant resides in this District and all of the events giving rise to Potts' claims occurred in this District.

[2]  These facts are taken from the second amended complaint and are presumed true for purposes of resolving the motion to dismiss.  *See, e.g., Barnes* v. *Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

any of Potts' minor rule violations as a "pretext" for segregating him. (*Id.*) For example, he alleges he was placed in the most restrictive housing unit in Cook County Jail Division XI for nine months after he was found in possession of a television remote. While in segregation, Potts alleges he has been denied his daily recreation (as provided for in Illinois Administrative Code § 701.260©) and in some instances confined to his cell for weeks at a time. Potts was also forced to live in a cell for "a number of months" that had "severe plumbing issues," including a toilet that leaked sewage onto the cell floor, no cold water, and little warm water. (*Id.* ¶ 25.) Despite Potts' grievances and complaints, it took "many months" to move him into a "fully functional cell." (*Id.*) On one particularly egregious occasion, Potts alleges the defendants kept the light on in his segregation cell for 24 hours per day for months at a time, despite the grievances he filed. Potts alleges that Dart attended "periodic 'level meetings'" at which defendants discussed the conditions and duration of Potts' confinement in segregation. (*Id.* ¶ 27.)

Potts also alleges that he has been subject to threats of physical force and actual abuse by Cook County Sheriff's officers. For example, Potts alleges he has been pepper-sprayed in his eyes and has had his fingers shut in a cell door. He also alleges Sheriff's officers have punched him, kicked him, and, on one occasion, stripped him naked and left him shackled to his bed for hours. Potts alleges he has also been targeted in other nonviolent ways, such as having his regular diet replaced with three portions of a meal replacement called "nutri-loaf" per day for "months at a time," without explanation of why such a restriction was put on his diet. (*Id.* ¶ 32.) He also alleges that on one occasion, Sheriff's officers took all of his possessions from his cell, including all of his legal papers, hygiene items, and blankets, and left him in his cell with

"nothing more than a bare mattress" for 21 days, only allowing him out to shower once per week. (*Id.* ¶ 33.)

The final category of allegations Potts alleges is that defendants denied him access to his counsel and to the courts. He alleges that he has been given very limited access to telephones to contact his attorneys and has generally been forced to speak with attorneys while a Jail employee was present or on a telephone monitored by Jail personnel. He alleges that he complained about this to Defendant Daniel Moreci, an employee of the Cook County Sheriff's office, but Moreci replied, "I don't have to follow some liberal left wing Judge's court order." (*Id.* ¶ 37.) He also alleges that on at least one occasion an employee of the Sheriff's office has read his privileged and confidential legal materials. Once he began filing grievances against defendants, he alleges that many legal materials he has sent have not been received and he has not received many pieces of mail sent to him. In particular, he has missed a court deadline because he has been denied access to his mail, and he has been precluded from filing briefing related to a *pro se* complaint he brought. He also alleges that he has been unable to communicate with counsel prior to court appearances without being videotaped by the Sheriff's office.

Additionally, Potts asserts that "problems related to the living conditions at Cook County Jail are legion" and, in support, cites to a Department of Justice study that found that inmates are not sufficiently protected from excessive force by Jail staff and that Jail personnel fail to adequately investigate incidents involving the use of force. (*Id.* ¶ 11.)

Potts alleges that all of these instances amount to violations of his First, Fifth, and Fourteenth Amendment rights. Count I alleges that the defendants retaliated against Potts for exercising his First Amendment rights by subjecting him to segregation for extended periods

4

"under conditions unlike those most detainees face," and subjecting him to other violence. (*Id.* ¶ 49.) Count II alleges the defendants deprived him of his procedural due process rights under the Fifth and Fourteenth Amendments by placing him in segregation for minor rule infractions (or for no infractions at all) without giving Potts the opportunity to contest the terms of his confinement. Count III alleges that the defendants violated Potts' equal protection rights pursuant to the Fourteenth Amendment because he has been "unlawfully singled out for arbitrary and irrational treatment, and subjected to treatment different from other similarly situated detainees." (*Id.* ¶ 64.) Count IV alleges that Potts has been denied access to the court by limiting his access to counsel, limiting access to his mail, confiscating his legal materials, and monitoring his conversations with his attorneys. Count V, liability against the Sheriff of Cook County pursuant to *Monell,* 436 U.S. 658, alleges that all of his mistreatment has been undertaken pursuant to "the policy and practice of the Sheriff of Cook County.[3] In Count VI, he alleges that the Cook County Sheriff is responsible for paying any tort judgment for compensatory damages for which Cook County employees are liable within the scope of their employment, and that Cook County is liable to pay any judgment for compensatory damages entered against the defendants.[4]

---

[3] The court presumes that the references to "the Sheriff of Cook County" in Count V, for *Monell* liability, refers to Dart in his official, and not individual, capacity. (Dkt. 52 ¶ 75.) Potts cannot bring his *Monell* claim against Dart in his personal capacity. *See Wilson* v. *Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988) ("Because personal-capacity suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable.").

[4] Although Potts does not cite the statute under which he alleges he is entitled to statutory indemnification, the court presumes he is referring to 745 Ill. Comp. Stat. 10/9-102, which provides that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable."

Dart has moved to dismiss the second amended complaint, arguing that he cannot be liable in his individual capacity for Potts' alleged harm. (Dkt. 70.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page,* 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS[5]

At the outset, the court notes the similarity between the briefs of both parties in this case and in another case brought by Potts against various Jail personnel in which Dart also moved to

---

[5]    Because, as stated above, Potts only brings Counts I-IV against Dart in individual capacity, this analysis only applies to those Counts as Counts V-VI are not at issue.

dismiss claims brought against him in his individual capacity. *See* Second Amended Complaint, *Potts* v. *Manos et al.*, No. 11 C 3952 (N.D. Ill. Aug. 6, 2013), ECF No. 52; Defendant Sheriff Dart's Motion to Dismiss Plaintiff's Complaint, *Potts* v. *Manos et al.*, No. 11 C 3952 (N.D. Ill. Oct. 21, 2013), ECF No. 72; Plaintiff's Response to Motion to Dismiss for Failure to State a Claim, *Potts* v. *Manos et al.*, No. 11 C 3952 (N.D. Ill. Nov. 4, 2013), ECF No. 75 (together, the "*Manos*" case). In fact, the parties' briefs in the two cases are essentially identical. Neither party makes an effort to differentiate between the sets of facts that form the basis of the claims in the cases—retaliation, due process and equal protection violations, and denial of access to counsel in this case, and excessive force and failure to protect in the other case. Because of the different types of claims and allegations in the present case and in *Manos*, the court is not persuaded that the cases should be treated in the same manner.

## I.     Individual Capacity Claims Under 28 U.S.C. § 1983

### A.     Personal Involvement Standard

In order to succeed on an individual capacity claim against a state actor under § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation. *Palmer* v. *Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Duncan* v. *Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims. *Kinslow* v. *Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, supervisors are held individually liable for violating the constitution only where they "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or

turn[ed] a blind eye for fear of what they might see." *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Crowder* v. *Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ("An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.").

### B.   Systemic Conditions Standard

There is a second basis on which Dart could be held liable for failure to protect Potts in his individual capacity. "A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail." *Warren ex rel. Warren* v. *Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) (citing *Antonelli* v. *Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996)). In *Antonelli*, the Seventh Circuit explained that the Sheriff of Cook County should not be held liable in his individual capacity for "clearly localized" claims brought by inmates where he had no knowledge of the facts underlying claims. *Antonelli*, 81 F.3d at 1429. It explained that the Sheriff and others in high-level positions are "far from most of the day-to-day decisions that may have affected inmates." *Id*. at 1428. Under the Seventh Circuit's distinction between "clearly localized, non-systemic violations" and "potentially systemic" violations, allegations of the former should be dismissed as to the Sheriff. *Id.* at 1429. The court held that the Sheriff could be held liable in his individual capacity for those potentially systemic claims that did not solely involve the plaintiff. *Id.* at 1428-29.

8

Thus, while high level officials normally cannot be held liable for localized violations, they "are expected to have personal responsibility for systemic conditions." *Jones* v. *Sheahan*, No. 99 C 3669, 2001 WL 1230551, at *6 (N.D. Ill. Oct. 15, 2001) (citing *Antonelli*, 81 F.3d at 1429). For example, in *Byron* v. *Dart*, 825 F. Supp. 2d 958, 963-64 (N.D. Ill. 2011), the court held that the plaintiff had adequately alleged that jail officials were liable under a failure to protect claim after the plaintiff had been attacked in his jail cell because the plaintiff alleged the defendants "knew there was a widespread problem of faulty cell doors." *Id.* at 964.

In another case addressing the *Antonelli* standard, *Jones* v. *Sheahan*, No. 01 C 6548, 2002 WL 959814, at *6 (N.D. Ill. May 9, 2002), the court denied a motion to dismiss claims against high level officials (including Cook County Sheriff Sheahan and the executive director of Cook County Jail) because, "[a]t this stage of the litigation, it is difficult to tell if the problem is non-systemic or systemic." The plaintiff there alleged various constitutional violations based on employees in the Cook County Jail mail room allegedly opening and reading privileged mail he sent to or received from attorneys. The defendants moved to dismiss, arguing that they could not be individually liable for these claims because they were not personally responsible for the alleged violations. The court denied the motion as "premature," explaining, "[i]f unidentified employees are intentionally opening and reading [the plaintiff's] legal mail, then it is clearly a non-systemic problem. If proper procedures have not been set up and are not being enforced for dealing with the large volume of mail that enters and leaves Cook County Jail, then it is clearly a systemic problem." *Id.*; *see also Terry* v. *Cook Cnty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 331720, at *3 (N.D. Ill. Jan 22, 2010) (denying Dart's motion to dismiss individual capacity claim against him where the claim was based on his "alleged failure to enact procedures, obtain

9

funding and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees"); *Lara* v. *Sheahan*, No. 06 C 669, 2007 WL 1030304, at *9 (N.D. Ill. Mar. 30, 2007) (denying Sheriff's motion to dismiss certain claims brought against him in his individual capacity where it was "difficult to tell" at that "stage of the litigation" if they were "non-systemic or systemic violations").

## II. How the Standards Apply to Counts I-VI

Dart argues that Potts' claim against Dart in Dart's individual capacity must be dismissed. He asserts that Potts' statement that Dart attended periodic "level meetings" during which the duration and conditions of Potts' confinement in the segregation unit were discussed "on information and belief" (dkt. 52 ¶ 27) is insufficient to meet requisite pleading standards. (Dkt. 70 at 2-3.) According to Dart, there is no factual basis to conclude that Dart was personally involved in any alleged unconstitutional conduct. (*Id.* at 3.) Potts responds that (1) he has met and exceeded the *Twombly* and *Iqbal* pleading standards; (2) cases from this district support his argument that a pretrial detainee can bring suit against the Cook County Sheriff in his individual capacity where he had personal knowledge of the operative facts; and (3) Dart is, at the very least, individually responsible for the creation of "deleterious system conditions" of which Potts was a victim. (Dkt. 74 at 8.)

### A. Count I: First Amendment Retaliation

To establish a claim for First Amendment retaliation under § 1983, Potts must demonstrate that he (1) engaged an activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter him from engaging in First Amendment activity in the future; and (3) a causal connection between the two. *See Watkins* v. *Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (quoting *Bridges* v. *Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

10

Potts alleges that defendants retaliated against him for complaining about Jail conditions, filing grievances concerning his treatment by defendants, and filing lawsuits regarding the conditions of his confinement. (Dkt. 52 ¶ 48.) Dart does not challenge whether retaliation itself occurred but, instead, whether Potts adequately alleged facts "that would even suggest a plausible claim against Sheriff Dart in his individual capacity." (Dkt. 70 at 3.) Potts argues in general that he has met this standard. (Dkt. 74 at 3-5.)

Potts has not met this standard. The only explicit reference to Dart in the allegations of Potts' complaint states, "[a]t all relevant times, Defendants maintained control over the conditions and duration of Plaintiff's confinement in [the segregation unit], which was discussed during periodic 'level meetings.' Upon information and belief, Defendant Dart attended these meetings." (Dkt. 52 ¶ 27.) Potts alleges that one means by which Jail personnel retaliated against him was by placing him in the segregation unit. He does not allege, however, that Dart had any knowledge that Jail personnel were retaliating against Potts, that this retaliation was discussed at the "level meetings," or that Dart directed Jail employees to retaliate against Potts in this way. Because Potts "fails to provide any additional elaboration in support of his individual capacity claim against Dart" regarding Count I, Dart's motion is granted. *See Adedeji*, 2013 WL 449592, at *5.

Count I should also be dismissed under the *Antonelli* standard because this is a "clearly localized" allegation. *Antonelli*, 81 F.3d at 1429. Jail personnel engaged in the actual acts about which Potts complained "purportedly in response to Plaintiff's verbal and/or non-violent interactions with Defendants and other Cook County Jail employees." (Dkt. 52 ¶ 28.) Any retaliatory action was taken against him "[i]n direct response to Plaintiff's exercise of protected speech." (*Id.* ¶ 49.) Nor does Potts argue that Jail personnel regularly retaliate against other

11

inmates or that Dart has "fostered an atmosphere at the Cook County Jail" in which correctional officers retaliate against inmates. *Warren*, 2010 WL 4883923, at *5. Dart's motion to dismiss Count I is granted.

**B.      Count II: Procedural Due Process**

A plaintiff may invoke a procedural due process claim in a suit brought under § 1983. *See, e.g., Zinermon* v. *Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). A procedural due process claim involves a two-part analysis. "First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Brokaw* v. *Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000) (citing *Hamlin* v. *Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996)). A pretrial detainee may not be subjected to conditions that amount to "punishment," such as being placed in segregation to reprimand him for infractions of Jail rules, without due process. *See Rapier* v. *Harris*, 172 F.3d 999, 1004-05 (7th Cir. 1999). "[A]lthough it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection." *Id.* at 1005. Conversely, "administrative segregation of a pretrial detainee for non-punitive reasons is not constitutionally prohibited punishment, [and thus] it does not require the government to first provide due process protections." *Erler* v. *Dominguez*, No. 09 C 88, 2011 WL 781528, at *5 (N.D. Ind. Feb. 28, 2011) (citing *Higgs* v. *Carver*, 286 F.3d 437, 438 (7th Cir. 2002); *Zarnes* v. *Rhodes*, 64 F.3d 285, 291-92 (7th Cir. 1995)). A county Sheriff can be held liable in his individual capacity under a procedural due process theory for segregating a detainee without a hearing, and at least one court has held that, for purposes of a motion to dismiss, the court can assume the Sheriff's personal responsibility for the placement of a pretrial detainee in disciplinary segregation. *See*

12

*Smith* v. *Cnty. of Kosciusko*, No. 91-5, 1992 WL 610457, at *3 (N.D. Ind. Nov. 6, 1992) (citing *Wellman* v. *Faulkner*, 715 F.2d 269, 275 (7th Cir. 1983).

Potts alleges that defendants violated his due process rights by assigning him to the segregation unit of Cook County Jail for long stretches with inadequate reasons to do so and without giving Potts a meaningful opportunity to contest the terms of his confinement. (Dkt. 52 Count II.) He alleges that on "many of the occasions" when he was placed in segregation, he was informed it was for a minor infraction of Jail rules. (*Id.* ¶ 55.) On other occasions, he was placed into segregation "without being informed of any punitive intent." (*Id.* ¶ 57.) Again, Dart does not challenge whether Potts has made out an actual claim for violation of his procedural due process rights but, instead, alleges that Potts has not alleged sufficient facts to bring this claim against Dart in his individual capacity. (Dkt. 70 at 3.) Potts asserts in general terms that he has.

Without commenting on the merits of Potts' allegation, the court concludes he is entitled to proceed with his due process claim against Dart in his individual capacity. Under *Smith*, Dart's personal responsibility for Potts' placement in segregation may be assumed for purposes of the motion to dismiss. *Smith*, 1992 WL 610457, at *3. Even absent *Smith*, however, the court holds that Potts adequately alleged Dart's knowledge of the "conditions and duration" of Potts' confinement in the segregation unit by alleging that this was discussed at periodic "level meetings" Dart attended.[6] (Dkt. 52 ¶ 27.) Because Potts has alleged that Dart had knowledge of Potts' allegedly unconstitutional confinement in the segregation unit, it is reasonable to infer that Dart "kn[e]w about the conduct and facilite[d] it, approve[d] it, condone[d] it, or turn[ed] a blind

---

[6] That Potts is only able to allege Dart's attendance at these meetings "on information and belief" is understandable at this point in the litigation. *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (detainee-plaintiff should not be faulted for reliance on "information and belief" where he had no knowledge of "an event offering definitive insight into the [detention] facility officials' minds").

eye" to it. *Gentry* v. *Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones*, 856 F.2d at 992).

### C.    Count III: Equal Protection

Because Potts is alleging that he was singled out for special treatment, it seems that he is alleging a "class of one" equal protection claim. "A class-of-one claim need not allege discrimination based on a suspect classification, but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair treatment." *Abcarian* v. *McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). To make out a *prima facie* case, the plaintiff "must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *O'Sullivan* v. *City of Burbank*, No. 02 C 2661, 2003 WL 22287349, at *5 (N.D. Ill. Sept. 30, 2003) (quoting *Hilton* v. *City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)). For example, in *Barnes* v. *Broy*, No. 08 C 290, 2009 WL 1702077, at **3-5 (S.D. Ill. June 16, 2009), the court held that the plaintiff had sufficiently stated a class of one equal protection claim against the chief of police for a town in Illinois under a theory of "supervisor liability," *i.e.*, that the supervisor knew about his subordinate's conduct and "faciliate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Id.* at *2 (quoting *Jones*, 856 F.2d at 992).[7] The court noted that the chief and his subordinates targeted the plaintiffs, and that the chief "himself singled them out and treated them differently from other [town] residents." *Id.* at *5.

---

[7] *Jones* is the same case that supports many of the cases defining requirements for individual capacity liability. *See, e.g., Carpenter* v. *Office of the Lake Cnty. Sheriff*, No. 04 C 2275, 2007 WL 1296998, at *11 (N.D. Ill. May 2, 2007) (quoting *Jones*, 856 F.2d at 992); *Hernandez* v. *City of Chicago*, No. 99 C 6551, 2001 WL 128246, at *7 (N.D. Ill. Feb. 9, 2001) (quoting *Jones*, 856 F.2d at 992).

Potts alleges that he has been "unlawfully singled out for arbitrary and irrational treatment, and subjected to treatment different from other similarly situated detainees" at the Jail. (Dkt. 52 ¶ 64.) Once again, Dart challenges whether Potts has brought any claim against him at all in Dart's individual capacity. (Dkt. 70 at 3.) Potts asserts that he has. (Dkt. 74 at 3-5.)

Again, without commenting on the merits of Potts' allegations, the court concludes that Potts may go forward with his equal protection claim insofar as it relates to the "conditions and duration" of his confinement in the segregated unit. (Dkt. 52 ¶ 27.) Potts has alleged that defendants singled him out for arbitrary treatment, and that defendants undertook this misconduct with malice, due in part to the periods that he has spent in the segregation unit. He alleges that while living in the segregation unit (often for inordinate periods of time), he was "subjected to living conditions that are inconsistent even with those other detainees in the segregation unit." (*Id.* ¶ 22.) While Potts does not allege that Dart had the specific contact with Potts that the police chief in *Barnes* did, he does allege that, like the chief's subordinates in *Barnes*, Dart's subordinates singled him out for disparate treatment with Dart's knowledge. *See Barnes*, 2009 WL 1702077, at *5. Because Potts alleges that Dart had knowledge of the "conditions and duration" of his confinement in segregation due to Dart's attendance where this segregation was discussed, the court will infer that Dart "kn[e]w about the conduct and facilite[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye" to it. *Gentry* v. *Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones*, 856 F.2d at 992).

As far as Count III relates to the alleged retaliation against Potts, deprivation of his access to the courts, or any other alleged actions taken against him other than his confinement in the segregated unit, however, it fails. A class-of-one equal protection plaintiff must show he was

15

"*intentionally* treated differently from others similarly situated." *Bishop* v. *Dart*, No. 10 C 4031, 2012 WL 4739101, at *5 (N.D. Ill. Oct. 3, 2012) (quoting *McDonald* v. *Vill. of Winnetka*, 371 F.3d 992, 1001) (7th Cir. 2004)) (emphasis added). Here, as discussed throughout this opinion, Potts has not even alleged that Dart had knowledge of or was involved in this mistreatment of Potts, let alone that he intended for it to occur. *See, e.g., Smith* v. *McCaughtry*, No. 09 C 00404, 2012 WL 3985767, at *2 (E.D. Wisc. Sept. 11, 2012) (dismissing class of one equal protection claim against three of the defendants who were not involved in the allegedly discriminatory treatment). The only mistreatment in which Dart was allegedly involved is Potts' confinement in the segregation unit. Moreover, *Antonelli* is inapplicable because Potts alleges that he was singled out for exceptional treatment to which other detainees were not subject, and he does not allege that singling out various detainees for mistreatment is in any way systemic.

Dart's motion to dismiss Count III is thus denied insofar as the Count alleges violations of Potts' rights based on the conditions and duration of his confinement in the segregation unit. It is granted as to all other allegations of which Dart is not alleged to have had any knowledge or involvement.

### D.    Count IV: Denial of Access to the Court

Detainees have the right to hire and consult an attorney, s*ee Jones*, 2002 WL 959814, at *3, and a "fundamental right of access to the courts." *Guajardo-Palma* v. *Martinson*, 622 F.3d 801, 803 (7th Cir. 2010) (quoting *Johnson* v. *Daley*, 339 F.3d 582, 586 (7th Cir. 2003)). "The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Denius* v. *Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000).

Dart does not challenge this fundamental right but, instead, challenges whether Potts

16

adequately alleged facts "that would even suggest a plausible claim against Sheriff Dart in his individual capacity." (Dkt. 70 at 3.) Potts argues in general that he has met this standard. (Dkt. 74 at 3-5.)

Potts has not alleged that Dart had any personal "knowledge of or involvement in" this alleged mistreatment. *Hoskins*, 2010 WL 4823065, at *3. As noted, the only explicit reference to Dart in the complaint is his attendance at meetings where the conditions and duration of Potts' confinement in segregation were discussed. (Dkt. 52 ¶ 27.) None of the other of the complaint's "substantive factual allegations mentions [Dart] by name or general title (*i.e.*, 'unknown physician' or the like), nor are there any allegations concerning acts or omissions by [Dart]." *Cruz* v. *Dart*, No. 11 C 00630, 2012 WL 5512275, at *4 (N.D. Ill. Nov. 13, 2012). Potts thus has not alleged sufficient facts to survive the motion to dismiss Count IV.

Nor does the *Antonelli* exception apply because Potts explicitly pleads that he has been singled out for this treatment. Regarding contact with his attorneys, Potts alleges that "he has been repeatedly denied access to many means of communication, and has been given only restricted access to his counsel in comparison to similarly situated detainees." (Dkt. 52 ¶ 34.) Indeed, he states "[m]ost detainees at Cook County Jail are allowed to place at least one telephone call each week" and detainees are able to make special arrangement to speak with counsel, but Potts has been deprived of this telephonic access. (*Id.* ¶ 35-36.)

Potts also alleges that he has "consistently experienced problems sending and receiving mail after he began filing grievances against Defendants." (*Id.* ¶ 39.) In *Jones*, the defendant Sheriff moved to dismiss individual capacity claims for Jail personnel reading the plaintiff's confidential mail but the court denied the motion because it was unclear whether the plaintiff's

17

mail was being intercepted because "proper procedures have not been set up and are not being enforced for dealing with the large volume of mail that enters and leaves Cook County Jail." *Jones*, 2002 WL 959814, at *6. But the court explained that if Jail employees were "intentionally opening and reading Jones's legal mail," that would "clearly [be] a non-systemic problem," which would not implicate the Sheriff's individual capacity liability. *Id.* Here, Potts has alleged that his mail troubles began as a result of filing grievances. Essentially, he argues that his mail was targeted as a means of retaliation. This is not a systemic problem.

Potts also alleges he has been videotaped while speaking with an attorney, but he does not allege that this is a systemic problem that any other inmate has faced. (Dkt. 52 ¶ 41.) Finally, Potts alleges that he has been deprived access to the courts because his legal materials were confiscated by Jail personnel at one point. (*Id.* ¶ 70.) But before discussing this confiscation, Potts states in the complaint that Jail personnel have targeted him "purportedly *in response to* Plaintiff's verbal and/or non-violent interactions with Defendants and other Cook County Jail employees." (*Id.* ¶ 28 (emphasis added).) In other words, this intentional targeting of Potts is "clearly a non-systemic problem." *Jones*, 2002 WL 959814, at *6. Because of the "localized" nature of these allegations, *Antonelli*, 81 F.3d at 1429, Count IV must be dismissed as to Dart in his individual capacity.

Finally, the two cases on which Potts relies in his response brief do not change the court's analysis because they both involve complaints in which the plaintiff *did* make allegations of systemic violations. In *Byron*, as discussed above, the court held that the plaintiff's claim against Dart in his individual capacity could proceed despite the plaintiff's failure to allege that Dart had "knowledge that [the plaintiff] specifically was likely to suffer an injury . . . because

[the plaintiff] has properly alleged that Defendants were aware of the general, obvious risk to inmate safety posed by the problem." *Byron*, 825 F. Supp. 2d at 964. The plaintiff supported his allegations of the "pervasive" and "well-documented" problem there by noting "numerous complaints filed, work orders placed, and the investigation and findings of the [Department of Justice." *Id.* at 963.

Potts also relies on *Warren*, but the plaintiff there included allegations much like the plaintiff in *Byron*. *See Warren*, 2010 WL 4883923, at *5. In *Warren*, the plaintiff was the next of kin of a pretrial detainee who died at Cook County Jail from bronchial asthma because Jail employees had confiscated her inhaler and had refused her medical treatment. Included in the complaint were allegations that Dart fostered an atmosphere at the Jail where medical personnel were encouraged to disregard detainees' medical needs and that he failed to have a system in place to review detainees' medical requests. *Id.* Given the allegations of these "systemic conditions," the court held that the plaintiff had adequately asserted a claim against Dart. *Id.* at *6.

Potts' factual allegations in his complaint do not rise to the level of those in *Byron* and *Warren*. To be sure, Potts cites to a Department of Justice report regarding the dangers detainees at Cook County Jail face. (Dkt. 52 ¶ 11.) But the complaint is devoid of other systemic allegations, barring the assertions he makes in laying out the elements of Count V, his *Monell* claim. For the reasons enumerated above, the claims that he pleads do not relate to systemic problems such that Dart's knowledge of them can be inferred.

**ORDER**

For the aforementioned reasons, Dart's motion to dismiss claims against him in his individual capacity is granted in part and denied in part. Dart's motion to dismiss Counts I and IV are granted and those Counts are dismissed without prejudice. Dart's motion to dismiss Count II is denied. Dart's motion to dismiss Count III is denied insofar as the claims relate to the "conditions and duration" of Potts' time in the Jail's segregation unit, and granted as to Potts' other claims, which are dismissed without prejudice. Dart shall respond to the remaining counts by November 27, 2013.

Date: November 7, 2013

_____
U.S. District Judge Joan H. Lefkow

20