IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **REGINALD M. POTTS, Jr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No.   12 C 5310 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| **DANIEL MORECI, MICHAEL MILLER,** ) | |
| **VICTOR THOMAS, FRANK ARCE, HUGH** ) | |
| **WALSH, COMMANDER SHEAHAN,** ) | |
| **THOMAS CINTRON, HAZEL DERDEN,** ) | |
| **DIEGO DIMARCO, ROBERT JEWELL,** ) | |
| **and THOMAS DART, individually and as** ) | |
| **SHERRIFF OF COOK COUNTY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Reginald Potts sues defendants, Daniel Moreci, Michael Miller, Victor Thomas, Frank Arce, Hugh Walsh, Commander Sheahan, Thomas Cintron, Hazel Derden, Officer DiMarco, Robert Jewell (all of whom are employees of the Cook County Sheriff's Office), and Sheriff Tom Dart, pursuant to 42 U.S.C. § 1983 for claims arising out of the conditions of his confinement during his pretrial detention in the Cook County Jail.  Defendants have moved for partial summary judgment.  For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

Plaintiff was in pretrial detention in Cook County Jail ("the Jail") from November 10, 2007 to March 9, 2016.  (Defs.' LR 56.1 Stmt., ¶ 1, ECF No. 187.)  He was initially placed in general population, but in December 2007, plaintiff was placed in administrative segregation.  (*Id*., ¶ 15-16.)  Plaintiff testified at his deposition in this case that he was never told why he was being

put in segregation, and neither side has pointed to evidence of any contemporaneous hearing at which the matter was discussed and plaintiff was informed of the reasons for the decision. (*See* Defs.' LR 56.1 Resp. to Pl.'s Stmt. of Add'l Facts ¶ 1, ECF No. 214.). There were various levels of segregation in the Jail during the relevant time frame, and the conditions of confinement varied somewhat among levels, but there appears to be no dispute that plaintiff was detained in Division IX in one level of segregation or another, under conditions in which he was required to spend 23 hours per day confined to his cell, during numerous, often lengthy, stints adding up to approximately four years. (*See id.*, ¶¶ 3-4, Pl.'s LR 56.1 Resp. to Defs.' LR 56.1 Stmt., ¶¶ 16, 19, ECF No. 198.) During these stints in segregation, each inmate in plaintiff's tier or "wing" was allowed out into the dayroom—shackled, handcuffed, and alone—for only an hour per day (*see* Defs.' LR 56.1 Resp., ¶ 3), when he was free to shower, watch television, or use the phone for personal calls.

Plaintiff filed numerous grievances concerning his conditions of confinement. (*See* Defs.' LR 56.1 Resp., ¶ 5; Pl.'s LR 56.1 Resp., ¶ 20.) He claims that a number of the individual defendants—Daniel Moreci, Michael Miller, Victor Thomas, Frank Arce, Hugh Walsh, Commander Sheahan, Thomas Cintron, Hazel Derden, Diego DiMarco, and Robert Jewell (hereinafter, "the individual defendants")—either filed or approved allegations of a multitude of disciplinary infractions against plaintiff during his detention in the Jail. (*See* Defs.' LR 56.1 Resp., ¶ 8; Pl.'s LR 56.1 Resp., ¶ 30.) During his detention at the Jail, plaintiff incurred 151 disciplinary infractions, although, in many of these cases, it was his word against the defendants', and he claims not to have actually committed the underlying offense. (Pl.'s LR 56.1 Resp., ¶ 30.) Based on these disciplinary infractions, the Jail authorities punished plaintiff in various ways,

especially by extending his time in segregation. (*See* Defs.' LR 56.1 Resp., ¶¶ 11-12; Pl.'s LR 56.1 Stmt. of Add'l Facts, Ex. 15, ECF No. 199-15 at 106.) Plaintiff also claims that Jail authorities punished him by restricting phone privileges and access to materials related to his various cases in litigation (Defs.' LR 56.1 Resp., ¶¶ 13-16), and placing him at times on a diet consisting solely of "Nutraloaf," a nutritious but unappetizing meatloaf-like food (*id.*, ¶ 19). Additionally, plaintiff claims that defendants, either personally or by approving or refusing to interfere with the actions of other officers, restricted plaintiff's access to mail and improperly read confidential materials sent to plaintiff in the mail (*id.*, ¶¶ 15-16); interfered with plaintiff's discussions with his criminal defense attorneys by monitoring or recording him (*id.*, ¶ 14); placed plaintiff in a cell with plumbing issues without correcting the plumbing problems (*id.*, ¶ 27); lit plaintiff's cell twenty-four hours per day, even at night, or refused to move him from a cell with a broken light switch or otherwise fix the electrical problem (Pl.'s LR 56.1 Resp., ¶¶ 43-45); and sprayed him with oleoresin capsicum ("OC") spray (*i.e.* pepper spray) even when he was not threatening harm to officers or other inmates (Defs.' LR 56.1 Resp., ¶ 17). Plaintiff claims that Sheriff Dart was personally aware of these issues, but took no action. (*Id.*, ¶¶ 24, 28-31.)

Plaintiff's complaint contains six counts, all but the last brought pursuant to 42 U.S.C. § 1983 based on alleged violations of his constitutional rights during his pretrial detention in the Jail: Count I, retaliation for filing grievances in the exercise of First Amendment rights; Count II, violation of procedural due process rights; Count III, violation of plaintiff's equal protection rights; Count IV, violation of plaintiff's Sixth Amendment right of access to the courts; Count V, municipal liability for the deprivation of plaintiff's constitutional rights pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978), based on

widespread practices and Sheriff Dart's knowledge and approval of plaintiff's treatment; and Count VI, indemnification of defendants by Cook County pursuant to state law.

## ANALYSIS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit, and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

Defendants seek partial summary judgment on the following grounds: (1) the individual defendants did not violate any of plaintiff's constitutional rights when he was initially placed in segregation; (2) the conditions of confinement of which plaintiff complains were not caused by the retaliation of Cook County Sheriff's officers or by a violation of due process, but by other factors, particularly plaintiff's own behavioral misconduct; (3) plaintiff was not denied access to the courts because the alleged interference with pending legal proceedings did not cause him to any suffer any adverse consequences in those proceedings; (4) plaintiff's equal protection claim fails because other inmates were treated similarly; (5) plaintiff's claim against Sheriff Dart in his individual capacity fails because there is no evidence that Sheriff Dart knew anything about plaintiff, his

4

placement in segregation, his grievances, or his disciplinary infractions; and (6) plaintiff's *Monell* claim fails because he does not establish that Sheriff Dart or the Sheriff's Office had any official policy or widespread practice that caused a violation of plaintiff's rights.

## I.  INDIVIDUAL DEFENDANTS AND INITIAL PLACEMENT IN SEGREGATION

The individual defendants, all of whom are Jail officers, some in supervisory roles, argue that plaintiff's initial placement in segregation did not violate his constitutional rights.

### A. Retaliation

The individual defendants contend that they are not liable for retaliating against plaintiff based on his initial placement in segregation in December 2007 because they were not involved in the initial decision to place plaintiff in segregation and, in any case, the decision came *before* plaintiff filed any grievances or lawsuits against Cook County Jail officers. Because, according to defendants, plaintiff did not file his first grievance until after he had already been in segregation for one month, his initial placement in segregation cannot have been in retaliation for filing grievances, based simply on the sequence of events.

Plaintiff does not appear to dispute this contention; indeed, based on the allegations of the operative Second Amended Complaint, it is not clear that he ever intended to rely on this theory of retaliation. But to whatever extent, if at all, plaintiff claims that he was initially placed in segregation in retaliation for protected First Amendment activity, summary judgment is granted for defendants on that part of plaintiff's retaliation claim.

### B. Due Process

According to defendants, plaintiff was placed in administrative (not disciplinary) segregation after he was charged with murder on December 8, 2007—and after the Chicago

Tribune published a December 9, 2007 article about the crime plaintiff had been charged with committing, which included the detail that plaintiff had previously escaped from federal custody in the Dirksen Federal Building in Chicago in 2002 and was not recaptured for two weeks. (Defs.' LR 56.1 Stmt., ¶ 15.) According to Assistant Executive Director Gilberto Romero, who defendants believe probably made the decision to place plaintiff in segregation (although he does not recall doing so), detainees might be placed in administrative segregation if they were "extremely high risk," *i.e.*, "escapees" or "highly aggressive inmates." (*Id.* ¶¶ 17-18.) The individual defendants contend that they did not personally make, and did not have the authority to make, the decision to place plaintiff in segregation; but even if they had, the evidence shows that plaintiff was placed in administrative segregation not as punishment but merely to further the "legitimate purpose of maintaining institutional security" based on plaintiff's history of escaping from law enforcement custody. (Defs.' Mem. at 6, ECF No. 192.)

> A person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged. . . . Nevertheless, a person lawfully detained in pretrial confinement . . . is subject to certain restrictions on his liberty. . . . The government also has legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up for trial. . . . These restraints may at times be discomforting, but, as long as they are reasonably related to the effective management of the confinement facility, they are not considered punishment for the crime that the detainee is suspected to have committed. . . . In addition to the regulatory measures that prison officials may take to ensure the effectiveness of pretrial confinement, a pretrial detainee can be punished for misconduct that occurs while he is awaiting trial in a pretrial confinement status. Notably, the basis for this punishment is not the underlying crime of which he stands accused; rather, this punishment is based upon the detainee's actions while in pretrial confinement.

*Rapier v. Harris*, 172 F.3d 999, 1002-03 (7th Cir. 1999) (internal citations and quotation marks

omitted). Whether a restriction placed on a pretrial detainee "amounts to punishment or a mere regulatory restraint depends on whether the purpose is an express intent to punish or whether there is a legitimate non-punitive purpose for the restriction." (Defs.' Mem. at 5) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).) *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("[D]isciplinary segregation can trigger due process protections depending on the duration and conditions of segregation.").

The evidence defendants cite suggesting that it was reasonable to put plaintiff in administrative segregation because he had shown himself to be a flight risk provides no more than a plausible reason for plaintiff's placement in segregation; it is woefully inadequate to demonstrate that there is no genuine factual dispute over the issue. Defendants cite no documents, record of a hearing, or other such evidence affirmatively establishing that plaintiff was actually placed in segregation for this reason, as a "mere regulatory restraint" with the "legitimate non-punitive purpose" to prevent plaintiff's escape, rather than as a premature punishment based on his indictment for murder, or for any other reason. A defendant seeking to demonstrate its entitlement to summary judgment by presenting affirmative evidence to negate plaintiff's claim must do so by way of *conclusive* evidence, without any "unexplained gaps." *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-58 (1970). The Chicago Tribune article and vague, general testimony of Assistant Executive Director Romero do not amount to conclusive evidence of why plaintiff was placed in segregation. Additionally, defendants do not cite authority demonstrating that placing plaintiff in segregation based on his history of escaping custody would be a constitutionally permissible reason under the circumstances of this case. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (grant of summary judgment improper if

7

moving defendants "never fulfilled the obligation of setting forth the basic facts and law which, in their view warranted summary judgment").

Plaintiff asserts that when he was placed in segregation in December 2007, he was not told why. (Pl.'s LR 56.1 Stmt., ¶ 1.) Given that the timing of the placement roughly coincided with the timing of plaintiff's murder charge, the Court concludes that a reasonable jury could find that the real reason for plaintiff's initial placement in segregation was punishment, for which he did not receive due process of law. *See Bell*, 441 U.S. at 535-36.

Defendants do not carry their burden of demonstrating that there is no genuine issue of fact on this issue, and their motion for summary judgment on this part of plaintiff's due process claim must be denied.

## II. EXTENDED STAYS IN SEGREGATION AND OTHER CONDITIONS OF CONFINEMENT

Defendants contend that plaintiff's extended stays in segregation were not the result of retaliation or a due process violation; they were punishment for plaintiff's own misconduct during his detention. Additionally, defendants argue that the other conditions of confinement that plaintiff complains of, including his plumbing issues, brightly-lit cell, placement on Nutraloaf rations, and restriction of phone privileges, do not rise to the level of constitutional deprivations.

### A. Extended Stays in Segregation

Defendants argue that plaintiff was a particularly disruptive and unruly detainee (1) whose numerous disciplinary infractions, not retaliation for filing grievances, were the cause of his extended stays in segregation, and (2) before he was punished for any of his disciplinary infractions, he received due process in the form of a hearing before a Disciplinary Hearing Board.

### i. Retaliation

Defendants cite a litany of evidence that plaintiff's extended stays in segregation were fully warranted by his bad behavior. (*See* Defs.'s Mem. at 6-10.) But defendants must demonstrate not just that some or even voluminous evidence supports their position, but also that *undisputed* evidence demonstrates that they are entitled to judgment as a matter of law. Plaintiff has pointed to abundant evidence on which a jury could base a reasonable inference that retaliatory animus based on the grievances and lawsuits plaintiff filed against defendants or other Jail officers, not plaintiff's supposed disciplinary infractions, was the real cause of his extended stays in segregation. (Pl.'s LR 56.1 Stmt., ¶¶ 5, 11-23, 25-27.) Defendants' motion must be denied on this part of plaintiff's retaliation claim because there is a genuine issue of material fact.

### ii. Due Process

Defendants contend that plaintiff received due process, in the form of a disciplinary hearing, for "each one" of the disciplinary infractions that resulted in an extension of his time in segregation. (Defs.' Mem. at 8.) But defendants have not adduced undisputed evidence that these hearings actually took place. The evidence they cite demonstrates that, as a matter of the Jail's general policy and procedure, detainees generally were to receive a hearing before any punishment was imposed on a disciplinary infraction, but, as plaintiff repeatedly states in his Local Rule 56.1 response, "[d]efendants take prescriptive statements in policy and procedure documents and offer no evidentiary support that the procedures were followed in this case." (Pl.'s LR 56.1 Resp. ¶¶ 27-29; *see also id.* at ¶¶ 30-32.) Plaintiff disputes that he received due process in the form of a hearing for each of his disciplinary infractions. Under these circumstances, the Court can hardly conclude that the undisputed facts entitle defendants to judgment as a matter of law; there is

a genuine dispute on an issue of material fact.

## B. Other Conditions of Confinement

Defendants argue that the other conditions of confinement of which plaintiff complains—plumbing issues, lighting issues, Nutraloaf rations, and restriction of phone privileges—do not rise to the level of constitutional deprivations or were not caused by defendants.

Plaintiff responds that defendants forced him to endure these conditions of confinement as retaliation[1] for filing grievances against them, and while these conditions may not rise to the level of constitutional harm in a vacuum, "otherwise permissible conduct can become impermissible when done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citing *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988) and *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987)).

To prevail on his retaliation claim, plaintiff must prove that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In other words, plaintiff must "set[] forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman*, 226 F.3d at 573 (quoting *Cain*, 857 F.2d

---

[1] Defendants argue not only that these conditions of confinement were not retaliatory but also that they did not violate plaintiff's due process rights. Defendants may be correct, *see, e.g., Rodriguez v. Veath*, No. 15 C 36, 2017 WL 1197241, at *8 (S.D. Ill. Mar. 31, 2017) (citing *Smith v. Melvin*, 94 F.3d 647 (7th Cir. 1996) (unpublished table disposition) ("Leaky toilets and puddles are unpleasant but not unconstitutional."), but the Court need not address the argument because plaintiff does not claim that these conditions of confinement (as opposed to his frequent placement in segregation for extended periods without notice and a hearing) violated his due process rights. He claims only that they were imposed in retaliation for filing grievances in the exercise of First Amendment rights. To whatever extent, if at all, his complaint might be read otherwise, plaintiff has waived any claim in that regard by failing to address defendants' arguments in his response brief, and the Court will grant summary judgment for defendants on that limited issue.

at 1143). He has plainly done so. He has set forth evidence that (1) he filed grievances and lawsuits, which is protected activity under the First Amendment; (2) he suffered numerous deprivations of various sorts that, drawing all reasonable inferences in his favor, may have been designed to deter plaintiff from filing grievances; and (3) a jury could reasonably infer that the grievances plaintiff was bringing against defendants or other Jail officers, which were numerous and potentially embarrassing to defendants or a hassle to deal with, were a motivating factor in their conduct. (*See* Pl.'s Resp. Br. at 7-12.)

Defendants insist that plaintiff raises a number of deprivations that were imposed not due to retaliatory animus but merely as a reasonable punishment for plaintiff's misbehavior. But defendants mistakenly treat their own view of the evidence as the only reasonable one; whether defendants acted with retaliatory animus is a question of fact, and a jury could reasonably find that they did. To grant defendants' motion for summary judgment would require the Court to weigh evidence or make determinations of witnesses' credibility, which the Court may not do at the summary judgment stage. *See Carr v. Whittenburg*, 462 F. Supp. 2d 925, 929-30 (S.D. Ill. 2006). Defendants motion for summary judgment on plaintiff's retaliation claim is denied.

## III.  DENIAL OF ACCESS TO COUNSEL AND THE COURTS

Defendants contend that plaintiff's right of access to counsel and the courts was not infringed by defendants' restriction of plaintiff's phone privileges, monitoring of his phone calls, videotaping him wherever he went (even during discussions with counsel), and interfering with his receipt of mail, including legal correspondence and other legal documents. Defendants argue that, to show a violation of his right of access to the courts while incarcerated, plaintiff must show not only that prison officials interfered with plaintiff's ability to prepare and file "meaningful legal

11

papers," *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995) (quoting *Bounds v. United States*, 430 U.S. 817, 828 (1977)), but that prison officials' misconduct in that regard caused some "'quantum of detriment . . . resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation,'" *Gentry*, 65 F.3d at 558 (quoting *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992)). Defendants argue, *inter alia*, that plaintiff has not shown any "quantum of detriment," *i.e.*, he has not shown that any action of defendants caused "court doors to be actually shut on a complaint" that plaintiff sought to litigate. *See Gentry*, 65 F.3d at 559.

Plaintiff does not address this point in his response brief, apparently conceding it. However, he argues that there is evidence that defendants' actions in restricting his telephone privileges interfered with his right to coordinate with his criminal defense counsel. (Pl.'s LR 56.1 Stmt., ¶¶ 13-14.) *See Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir. 1991) (restriction of phone privileges and monitoring of detainee's conversations that "substantially affect the prisoner's right to confer with counsel" violate criminal defendant's Sixth Amendment rights). Defendants do not squarely reply to this argument. There is a genuine dispute of fact over whether defendants interfered with plaintiff's ability to communicate with counsel in coordinating his criminal defense. To the extent that plaintiff has alleged that defendants' conduct interfered with his civil lawsuits, defendants' motion for summary judgment on plaintiff's claim of denial of access to the courts is granted because he has not demonstrated that he suffered the requisite "quantum of detriment." However, defendants' motion is denied to the extent that plaintiff claims that defendants interfered with his right of access to counsel in coordinating his criminal defense.

## IV. EQUAL PROTECTION CLAIM

To prevail on a claim that he has been singled out by a public official for adverse treatment

because of personal hostility, in violation of the equal protection clause (*i.e.*, a "class of one" claim), a plaintiff must prove either that "'the defendant deliberately sought to deprive [the plaintiff] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position,'" or that "the defendant had[,] without a rational basis[,] intentionally treated the plaintiff differently from others similarly situated." *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005) (quoting *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir.2000)). Defendants argue that, to the extent that plaintiff claims that defendants violated his equal protection rights by videotaping him, placing him on Nutraloaf rations, and placing him in segregation, the claim must fail because (1) other detainees received similar treatment, and (2) even where plaintiff's treatment differed, there was a rational basis for the disparate treatment in plaintiff's conduct, which made him a "penological nightmare." (*See* Defs.' Mem. at 18-19.) Plaintiff responds that whether other detainees were truly treated similarly for similar conduct or, to the extent that plaintiff was treated differently, whether that treatment was rooted in a rational basis rather than discriminatory animus are disputed questions of fact. (*See* Pl.'s Resp. Br. at 14.) The Court agrees with plaintiff. Plaintiff has adduced abundant evidence that he was treated differently from other detainees for similar conduct or he was singled out for adverse treatment (*see* Pl.'s LR 56.1 Stmt., ¶¶ 13, 15, 21, 23, 25, 33), and he has adduced evidence of a long, fractious relationship with Jail authorities in which there was frequent tension over disciplinary issues and his conditions of confinement; based on that evidence, a reasonable jury could find that plaintiff was treated differently and the reason for his disparate treatment was discriminatory animus. Defendants' motion for summary judgment on plaintiff's equal protection claim is denied.

## V. INDIVIDUAL CLAIMS AGAINST SHERIFF DART

Defendants contend that Sheriff Dart is entitled to summary judgment on the claims against him in his individual capacity. Plaintiff's retaliation claim and denial-of-access-to-courts claim have already been dismissed against Sheriff Dart. (Nov. 7, 2013 Op. & Order, ECF No. 75.) The procedural due process and equal protection claims remain because the Court found that plaintiff plausibly alleged in his complaint that, based on his attendance at certain meetings and other information he had received, Sheriff Dart knew of plainiff's allegedly unconstitutional confinement in segregation and its conditions and duration, and assuming the truth of those allegations, a jury could reasonably infer that Sheriff Dart "'kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye' to it." *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1072 (N.D. Ill. 2013) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Defendants claim that the evidence the parties have discovered reveals no genuine factual dispute as to whether Sheriff Dart ever knew or had any reason to know that the conditions of plaintiff's confinement or his treatment by Jail officers exceeded constitutional bounds.

Plaintiff responds that defendants' position ignores the evidence that (1) plaintiff's name was at least mentioned in some of the agendas and other documents pertinent to certain of the "Sheriff's Accountability Meetings," which Sheriff Dart attended; (2) Sheriff Dart was aware of who plaintiff was; and (3) according to plaintiff, Sheriff Dart personally conversed with plaintiff about his conditions of confinement on a few occasions. (*See* Pl.'s LR 56.1 Stmt., ¶¶ 30-31, Pl.'s LR 56.1 Resp., ¶¶ 66-67.) Based on this evidence, plaintiff argues, a jury could reasonably infer that Sheriff Dart knew of defendants' unconstitutional treatment of plaintiff and facilitated it,

14

approved it, condoned it, or turned a blind eye to it.

The Court agrees with plaintiff. The evidence of Sheriff Dart's knowledge of the conditions of plaintiff's confinement may be scant, but to rule that no reasonable factfinder could credit it, as defendants urge, would be to weigh evidence, which the Court may not do at this stage of this case. There is sufficient evidence to create a genuine issue of material fact for the jury to resolve. Defendants' motion for summary judgment on the individual claims against Sheriff Dart must be denied.

## VI. *MONELL* LIABILITY

Defendants contend that they are entitled to summary judgment on plaintiff's claim that Cook County is liable under *Monell*, 436 U.S. at 690-91, for the constitutional violations plaintiff has alleged because plaintiff has not demonstrated that any municipal policy, custom, or action of a person with final policymaking authority on behalf of Cook County has caused any violations of his constitutional rights. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) ("The critical question under *Monell* . . . is whether a municipal . . . policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents.").

Plaintiff responds that there is evidence of municipal liability creating a genuine issue of fact on all of his claims because Jail officers' repeated actions toward him demonstrate a custom or widespread practice. *See Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1095 (N.D. Ill. 2007) ("To establish a widespread custom or policy, Plaintiff is not required to show that Cook County's alleged unconstitutional widespread practices actually caused pain and suffering to other inmates . . . . Instead, it is enough that Plaintiff provides competent evidence tending to show that the alleged practices were, indeed, widespread . . . . [and] truly evince the existence of a policy.") (citing *Davis*

15

v. *Carter,* 452 F.3d 686, 695 (7th Cir. 2006) and *Phelan v. Cook Cty.,* 463 F.3d 773, 789-90 (7th Cir. 2006)). The Court agrees that, viewing the facts in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, there is evidence of a series of alleged constitutional transgressions that is sufficiently lengthy to constitute a widespread practice or custom. Additionally, plaintiff argues that there is evidence that Sheriff Dart was aware of certain of plaintiff's unconstitutional conditions of confinement, but they continued unabated, which, according to plaintiff, shows that there is a genuine issue of fact as to whether Sheriff Dart—who is an authorized final policymaker for Cook County, within the scope of his office, *see Maldonado v. Garcia*, No. 13 C 8981, 2015 WL 4483975, at *4 (N.D. Ill. July 22, 2015) ("In Illinois, sheriffs have final policymaking over jail operations.") (internal quotation marks omitted)—tacitly approved of them. Again, the Court agrees.

Defendants do not have the ultimate burden of proof on any of these claims, and it is true that when a party who does not have the burden of proof moves for summary judgment, the burden of production that Federal Rule of Civil Procedure 56 imposes on him is not "onerous." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013). However, the non-moving party's burden in response is not particularly onerous, either. The non-moving party is required to "'go beyond the pleadings' . . . to demonstrate that there is evidence 'upon which a jury could properly proceed to find a verdict' in her favor." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986)). Although the evidence supporting some of plaintiff's claims may not be overwhelming, plaintiff has largely met his burden to overcome defendant's motion for summary judgment.

## **CONCLUSION**

For the reasons set forth above, defendants' motion for partial summary judgment [185] is granted in part and denied in part. The motion is granted as to any claim that (i) plaintiff's initial placement in segregation was in retaliation for protected First Amendment activity; (ii) any conditions of confinement other than plaintiff's placement in segregation for extended periods allegedly without notice and a hearing violated his due process rights; or (iii) defendants' conduct denied him access to the courts by interfering with his civil lawsuits. The motion is otherwise denied. A status hearing is set for October 25, 2017, at 9:30.

**SO ORDERED.**

                **ENTERED: September 29, 2017**

                _____
                **HON. JORGE ALONSO**
                **United States District Judge**