## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **REGINALD M. POTTS, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 11 C 3952 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| **JOHN MANOS, DANIEL SCHICKEL,** | ) | |
| **ARTHUR RUSHING, THOMAS CINTRON,** | ) | |
| **VICTOR THOMAS, HAZEL DERDEN,** | ) | |
| **GILBERTO ROMERO, DANIEL MORECI,** | ) | |
| **WILLIAM THOMAS, TERESA CALVIN,** | ) | |
| **THOMAS DART, and COOK COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

| | | |
|---|---|---|
| **REGINALD M. POTTS, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 12 C 5310 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| **DANIEL MORECI, MICHAEL MILLER,** | ) | |
| **VICTOR THOMAS, FRANK ARCE, HUGH** | ) | |
| **WALSH, COMMANDER SHEAHAN,** | ) | |
| **THOMAS CINTRON, HAZEL DERDEN,** | ) | |
| **DIEGO DIMARCO, ROBERT JEWELL,** | ) | |
| **and THOMAS DART, individually and as** | ) | |
| **SHERRIFF OF COOK COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Reginald Potts, formerly a pretrial detainee at Cook County Jail, has brought the above-captioned cases against Cook County, Cook County Sheriff Thomas Dart, and numerous individuals employed by the Cook County Sheriff's office as correctional officers at Cook County Jail, asserting claims of violations of his constitutional rights pursuant to 42 U.S.C. §

1983. Defendants have proffered the testimony of an expert witness, Martin Horn. In both cases, plaintiff has filed identical motions to exclude Mr. Horn's testimony. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff filed two cases against Cook County, Sheriff Dart, and various Cook County Jail ("Jail") correctional officers arising out of his pretrial detention in the Jail. In both cases, he claims that defendants violated his constitutional rights, including by habitually using or condoning the use of excessive force against him.

### **Potts v. Moreci, 12 C 5310**

In *Potts v. Moreci*, No. 12 C 5310, plaintiff's complaint contains six counts: Count I, retaliation for filing grievances against Jail officers in the lawful exercise of First Amendment Rights; Count II, violation of procedural due process rights; Count III, violation of equal protection rights; Count IV, violation of Sixth Amendment right of access to the courts; Count V, Cook County is liable for the deprivation of plaintiff's constitutional rights pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978), based on Sheriff Dart's knowledge and approval of plaintiff's unconstitutional treatment; and Count VI, indemnification of defendants by Cook County pursuant to state law.

Plaintiff was in pretrial detention in Cook County Jail from November 10, 2007 to March 9, 2016. (Defs.' LR 56.1 Stmt., ¶ 1, ECF No. 187.) He was initially placed in general population, but in December 2007, plaintiff was placed in administrative segregation. (*Id.* ¶ 15-16.) Plaintiff testified at his deposition in this case that he was never told why he was being put in segregation, and neither side has pointed to evidence of any contemporaneous hearing at which the matter was discussed and plaintiff was informed of the reasons for the decision. (*See*

Defs.' LR 56.1 Resp. to Pl.'s Stmt. of Add'l Facts, ¶ 1, ECF No. 214.). There were various levels of segregation in Cook County Jail at that time, and the conditions of confinement varied somewhat among levels, but there appears to be no dispute that plaintiff was detained in one level of segregation or another, under conditions in which he was required to spend 23 hours per day confined to his cell, during numerous, often lengthy stints adding up to approximately four years. (*See id.*, ¶¶ 3-4, Pl.'s LR 56.1 Resp. to Defs.' LR 56.1 Stmt., ¶¶ 16, 19, ECF No. 198.) During these stints in segregation, each inmate in plaintiff's tier or "wing" was allowed out into the dayroom—shackled, handcuffed, and alone—for only an hour per day (*see* Defs.' LR 56.1 Resp., ¶ 3), when he was free to shower, watch television, or use the phone for personal calls.

Plaintiff filed numerous grievances concerning his conditions of confinement. (*See id.* ¶ 5; Pl.'s LR 56.1 Resp. ¶ 20.) He claims that a number of the individual defendants—Daniel Moreci, Michael Miller, Victor Thomas, Frank Arce, Hugh Walsh, Commander Sheahan, Thomas Cintron, Hazel Derden, Diego DiMarco, and Robert Jewell (hereafter, "the individual defendants")—either filed or approved allegations of a multitude of disciplinary infractions against plaintiff during his detention in the Jail. (*See* Defs.' 56.1 Resp. ¶ 8; Pl.'s 56.1 Resp. ¶ 30.) During his detention at the Jail, plaintiff incurred 151 disciplinary infractions, but in many of these cases, it was his word against the defendants', and he claims not to have actually committed the underlying offense. (Pl.'s LR 56.1 Resp. ¶ 30.) Based on these disciplinary infractions, the Jail authorities punished plaintiff in a variety of ways, especially by extending his time in segregation. (*See* Defs.' 56.1 Resp. ¶¶ 11-12; Pl.'s 56.1 Stmt. of Add'l Facts, Ex. 15, ECF No. 199-15, at 106.) Plaintiff also claims that Jail authorities punished him by restricting phone privileges and access to materials related to his various cases in litigation (Defs.' 56.1 Resp., ¶¶ 13-16), and placing him at times on a diet consisting solely of "Nutraloaf," a nutritious

but unappetizing meatloaf-like food (*id.*, ¶ 19). Additionally, plaintiff claims that defendants, either personally or by approving or refusing to interfere with the actions of other officers, restricted plaintiff's access to mail and improperly read confidential materials sent to plaintiff in the mail (*id.*, ¶¶ 15-16); interfered with plaintiff's discussions with his criminal defense attorneys by monitoring or recording him (*id.* ¶ 14); placed plaintiff in a cell with plumbing issues without correcting the plumbing problems (*id.*, ¶ 27); lit plaintiff's cell twenty-four hours per day, even at night, or refused to move him from a cell with a broken light switch or otherwise fix the electrical problem (Pl.'s 56.1 Resp., ¶¶ 43-45); and sprayed him with oleoresin capsicum ("OC") spray (*i.e.* pepper spray) even when he was not threatening harm to officers or other inmates (Defs.' 56.1 Resp., ¶ 17). Plaintiff claims that Sheriff Dart was personally aware of these issues, but took no action. (*Id.*, ¶¶ 24, 28-31.)

**Potts v. Manos, 11 C 3952**

In *Potts v. Manos*, 11 C 3952, plaintiff makes similar and overlapping allegations that Jail officers habitually used excessive force against him. In Count I, he asserts a claim of excessive force, and in Count II, he claims that Jail officers and supervisors failed to protect plaintiff from the use of excessive force. Plaintiff also claims in Count III that Cook County is (a) liable for these violations of constitutional rights under *Monell*, and in Count IV that Cook County is required by Illinois law to indemnify the defendants for any judgment they become liable to pay for conduct within the scope of their duties.

Plaintiff alleges that, on numerous occasions, Jail officers have used OC spray or other excessive force against him. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 1, ECF No. 191.) On some occasions, Jail officers sprayed plaintiff with OC spray or otherwise used excessive force based on their perception that plaintiff was not complying with their orders or commands, even if he

4

was not behaving in a threatening manner. (*See id.*, ¶¶ 8, 10, 13, 18.) Defendants Cintron and William Thomas were among the supervisory officers tasked with reviewing uses of OC spray by Jail officers on detainees such as plaintiff and assessing their reasonableness. (*Id.*, ¶¶ 23, 28.) According to plaintiff, Sheriff Dart was personally aware of these issues, but took no action. (*Id.*, ¶¶ 31-32, 34-35.)

On one occasion in particular, on May 27, 2009, defendant Calvin sprayed plaintiff with OC spray because she judged that he was not complying with her command to rinse and exit the shower. (*See id.*, ¶¶ 10, 24.) Defendants Schickel and Manos arrived to transport plaintiff to the infirmary to receive medical attention. (*Id.*, ¶ 10.) Plaintiff had not rinsed the OC spray off, and he refused to move when Schickel and other officers attempted to escort him to the infirmary. (*Id*; Defs.' LR 56.1 Stmt., ¶ 13, ECF No. 179.) Officer Schickel dragged plaintiff for approximately ten feet, before he and other officers picked him up and began to carry him to the infirmary. (Defs.' LR 56.1 Stmt., ¶¶ 15, 17.) Eventually, plaintiff decided he would walk on his own. (*Id.*, ¶ 17.)

**Expert Martin Horn's Opinions**

Martin Horn has worked in the field of corrections since 1969, when he began as a parole officer, and he has worked in numerous different positions since, including Secretary of Corrections for the Commonwealth of Pennsylvania (the head of Pennsylvania's prison system) from 1995 to 2000, and Commissioner of the New York City Department of Correction (the head of the city's jail system) from 2002 to 2009. Since 2009, he has been a lecturer at the John Jay College of Criminal Justice in New York.

According to his report, Mr. Horn has reviewed reports, records, and video recordings of incidents in which officers used force against plaintiff or took disciplinary action against him

5

during his confinement in the Jail, as well as relevant policies and procedures of Cook County Jail. He proposes to testify that in those documents and records, he has found no evidence that plaintiff was placed in segregation or otherwise disciplined for any improper or implausible reason, nor has he found that the Jail's written policies were unreasonable or that Jail officials typically deviated from them. Further, he opines that plaintiff was a particularly difficult inmate to manage, and his behavior warranted the treatment he received. In particular, Mr. Horn opines, the conditions of plaintiff's cell, the searches of his cell, the practice of videotaping him, and the use of Nutraloaf as punishment all appeared to be reasonable and in line with recognized standards, or the "community standard of practice." (Horn Report at 6-8, *Potts v. Moreci*, Case No. 12 C 5310, ECF No. 202-1.) Additionally, according to Mr. Horn, Jail officers did not use OC spray or other force "without justification or disproportionately" in relation to the circumstances. (*Id.* at 8-10.)

## ANALYSIS

"The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles outlined in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending application of *Daubert* factors to engineers and other non-scientific experts)." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (internal citations altered). Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

6

The rule imposes "three basic prerequisites." *Weinstein's Federal Evidence* § 702.02[3]. "Under Federal Rule of Evidence 702 and *Daubert*, the district court must . . . determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007)).

In assessing reliability, the district court must ensure that the proffered expert testimony is "well-grounded in methods and procedures" of the expert's technical discipline. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Importantly, an expert opinion may be based on "extensive and specialized experience," rather than scientific data, if the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152-53; *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience,* training, or education.'").

"In addition, Federal Rule of Evidence 403 overlays all other evidentiary rules by stating that a court may 'exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury.'" *Krik v. Exxon Mobil Corp.*, No. 15-3112, 2017 WL 3768933, at *3 (7th Cir. Aug. 31, 2017) (quoting Fed. R. Evid. 403). "The proponent of the expert"—here, defendants—"bears the burden of demonstrating that the expert's testimony" is admissible under the *Daubert* standard and the Federal Rules of Evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)

Mr. Horn essentially proposes to testify that (i) Cook County's policies on the use of

7

force, inmate discipline, and related issues were not unreasonable, and (ii) Jail officers' actions against Mr. Potts were also not unreasonable in light of those policies and other circumstances. According to plaintiff, any argument in favor of admitting Mr. Horn's proposed testimony is foreclosed by *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). In *Thompson*, the Seventh Circuit held that a municipality's written policy on the proper use of force by its peace officers is irrelevant to a constitutional claim that its officers used excessive force, which is governed by an objective constitutional standard that the municipality's own policies cannot alter or illuminate. *See id.* at 453-55; *see also Whren v. United States*, 517 U.S. 806, 815 (1996) ("[P]olice enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time. We cannot accept that [constitutional protections] are so variable and can be made to turn upon such trivialities.") (internal citations omitted). Additionally, the Seventh Circuit explained in *Thompson* that it was within the district court's discretion under Federal Rule of Evidence 403 to bar expert witnesses from testifying that the defendant officer's use of force was not excessive under the circumstances, reasoning that such testimony "bore a substantial risk of prejudice" and "would have been of little value" because "[t]he jury . . . was in as good a position as the experts to judge whether the force used by the officers . . . was objectively reasonable given the circumstances in this case." *Id.* at 458.

The Seventh Circuit has recently cautioned that *Thompson* "should not be understood as establishing a rule that evidence of police policy or procedure will *never* be relevant to the objective-reasonableness inquiry" on an excessive force or other constitutional claim against a law enforcement officer. *See United States v. Brown*, No. 16-1603, 2017 WL 3947160, at *4 (7th Cir. Sept. 8, 2017). True, expert testimony on law enforcement policies or procedures is unlikely to be helpful to a jury tasked only with assessing whether a law enforcement officer's

8

use of force was reasonable because "jurors can understand the concept of reasonableness" on their own, but in some cases "specialized knowledge of law-enforcement custom or training would assist the jury in understanding the facts or resolving the contested issue." *Id*. "[E]xpert testimony is more likely to satisfy Federal Rule of Evidence 702's requirement that it 'assist the trier of fact to understand the evidence or determine a fact in issue' when something peculiar about law enforcement (*e.g.,* the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact." *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011). For example, expert testimony may be useful in determining "whether it was reasonable for police to use a canine officer (and its canines) in bringing a suspect to heel," *id.* (citing *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir. 1993)), but not in determining whether "it would have been unreasonable [for a law enforcement officer] to expect voluntary compliance with a knock at the door in 15 seconds" because "everyday experience teaches people how long it takes to walk from room to room," *Florek*, 649 F.3d at 603, nor in determining whether it was reasonable for a police officer to "hit a motionless man in the face with his fist and continue[] to beat and kick him before placing him under arrest" because "[a]n expert's explanation of the Chicago Police Department's Use of Force Model would have added nothing that the jurors could not ascertain on their own by viewing the surveillance videotape and applying their everyday experience and common sense," *Brown*, 2017 WL 3947160, at *5.

Defendants have not demonstrated that Mr. Horn's testimony will be helpful to the jury or that this is a case where evidence of any Cook County policy will shed light on whether defendants behaved unreasonably in a way that violated plaintiff's constitutional rights. Mr. Horn does not say anything about Cook County's policies except, essentially, that he approves of them, they tend to reflect generally recognized standards as he understands them, and the

9

evidence he has seen tends to indicate that defendants behaved consistently with them. Neither he nor defendants identify anything in Cook County's policies and procedures that will help the jury answer the key questions they will face in this case.

To be admissible, Mr. Horn's testimony must, by way of a reliable, recognizably professional or technical methodology, assist the jury in making factual determinations that permit them to resolve issues such as whether the force defendants used or other actions they took toward plaintiff were objectively unreasonable or excessive under the circumstances, or unrelated to a legitimate government objective, *see Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74 (2015), whether defendants acted or omitted to act with deliberate indifference to plaintiff's safety, *see Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir. 2008), whether supervisory defendants facilitated, approved, condoned, or turned a blind eye to violations of his constitutional rights, *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010), whether they deliberately or without a rational basis treated plaintiff differently from other, similarly situated inmates, *see Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005), whether they interfered with plaintiff's right to confer with his criminal defense counsel, *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991), or whether there was a widespread practice or custom of officer misconduct that violated plaintiff's constitutional rights during his detention at the Jail, *see Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Just as in *Thompson*, the standards the jury will have to apply to resolve these claims are derived not from Cook County's policies but from the Constitution, and the jury's inquiry is essentially a fact-bound one into the particular knowledge and intent of the defendants in taking particular actions or turning a blind eye to them. The Court fails to see how Mr. Horn's opinions on whether defendants were following sound Cook County policy in their interactions with plaintiff will assist the jury in the

factual determinations it is required to make.  Plaintiff's motion to exclude Mr. Horn's testimony will be granted as to these opinions.

The remainder of Mr. Horn's report is devoted to his opinions, based on his review of video or other records, of the reasonableness of the use of force by Jail officers in particular incidents as well as the appropriateness and reasonableness of other actions or omissions of Jail officers while plaintiff was in their custody.  Defendants argue that the Seventh Circuit has recognized (albeit in an unpublished, nonprecedential opinion) that expert testimony on proper law enforcement practices, including proper uses of force, is potentially admissible.  *See Cacciola v. McFall*, 561 F. App'x 535, 538 (7th Cir. 2014).  But they fail to mention that the court in *Cacciola* also distinguished between (a) expert testimony that is offered in hypothetical terms to inform the jury of law enforcement use-of-force practices generally, which the court recognized as "permissible," and (b) expert testimony on "'the proper actions of individual officers in one discrete situation,'" *id.* (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004)), which is critically different.  Mr. Horn is not offering the sort of testimony that the Seventh Circuit approved in *Cacciola*; he is offering the kind it specifically stated it was *not* approving, the kind in which experts opine on the proper actions of individual officers in particular, discrete situations.

Defendants argue that Mr. Horn should be permitted to offer these opinions because he has expertise on the administration of correctional institutions, and, according to defendants, based on this expertise, his opinions will assist the jury in understanding defendants' actions in their full context, *i.e.*, in light of "legitimate operational concerns" that required special disciplinary and "administrative measures" to deal with an inmate who was, from defendants' perspective, chronically and uniquely disruptive and unruly.  *See Rapier v. Harris*, 172 F.3d 999,

1003 (7th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). But the Court is not persuaded that Mr. Horn's expertise in the sound administration of correctional institutions provides any basis for distinguishing this case from *Thompson*. Again, as in *Thompson*, the jury will be required to apply standards set by the Constitution, not correctional institution administrators, and the jury's inquiry is essentially a fact-bound one into the particular knowledge and intent of the defendants in taking or omitting to take particular actions. To the extent the circumstances of any particular action or omission of defendants must be understood in light of the government's "legitimate interests that stem from its need to manage the facility in which [plaintiff was] detained," *see Rapier*, 172 F.3d at 1002-03, defendants themselves or other appropriate fact witnesses will be able to provide the necessary context. Mr. Horn's expert testimony adds little, but it risks "induc[ing] the jurors to substitute their own independent conclusions for [those] of" Mr. Horn, or in other words, "'to decide the case on an improper basis . . . rather than on the evidence presented . . . ,' which is precisely why the evidence should [be] excluded" under Rule 403. *See Thompson*, 472 F.3d at 458 (quoting *United States v. Connelly*, 874 F.2d 412, 418-19 (7th Cir. 1989)); *see also Brown*, 2017 WL 3947160, at *5 ("[A]s the district judge concluded, the admission of [the expert's] testimony may have induced the jurors to defer to his conclusion rather than drawing their own.").

Additionally, the Court agrees with plaintiff that even if there is some basis for admitting Mr. Horn's proposed testimony in his expertise in the administration of correctional institutions, the Court must bar his testimony because he has not expressed how his expertise leads to his conclusions. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than . . . explain how his conclusions met [Rule 702's] requirements . . . [is] not entitled to give expert testimony.") A witness who offers expert

testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under *Daubert* and the Federal Rules of Evidence. *See Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, No. 09-CV-2513, 2011 WL 4840965, at *3 (N.D. Ill. Oct. 12, 2011) (rejecting expert's proposed testimony based on his prior experience because "he never draws explicit connections between specific incidences or lessons from his professional history and the [facts of the case]"); Fed. R. Evid. 702, Advisory Comm. Notes ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). In his report and at his deposition, Mr. Horn did not adequately explain how he reached his conclusions that particular policies and actions of Cook County and Jail officers were reasonable and not excessive, other than to cite his experience.

Rule 702 requires an expert to "explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *See Metavante*, 619 F.3d at 761 (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) ("Given [the expert's] failure to explain his methodology, the district court could conclude that the report offered nothing of value to the judicial process.") (internal quotation marks omitted)); *see also United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (rejecting expert testimony where expert "in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"). Mr. Horn proposes to testify that none of the evidence he has seen shows that defendants used excessive force or otherwise acted unreasonably toward plaintiff, without explaining how he reached his conclusion that defendants behaved reasonably. In other words, he is merely asserting a bottom line. *See Metavante*, 619 F.3d at 761; *Zenith*,

13

395 F.3d at 419. His opinions are pure *ipse dixit*, or say-so, and he will not be permitted to offer them at trial.

## **CONCLUSION**

For the reasons set forth above, plaintiff's motions to bar the expert testimony of Martin Horn [*Potts v. Moreci*, Case No. 12 C 5310, ECF No. 201], [*Potts v. Manos*, Case No. 11 C 3952, ECF No. 182] are granted in both of the above-captioned cases.

**SO ORDERED.**

ENTERED: September 29, 2017

_____
**HON. JORGE ALONSO**
**United States District Judge**